## HOMER W. HEATON AND ANOTHER *v.* WELTHY J. SAWYER.*

### *Homestead. Divorce.*

1. A married woman under our statute—R. L. s. 1897—loses her incohate right to a homestead in the premises of her husband when she is divorced from him; and if in such case the custody of the minor children is decreed to her, they cease to be a part of their father's family and lose all right to his homestead.

2. And a mortgage executed solely by the husband is valid when the wife subsequently obtains a divorce; and, on his decease, if the custody of the children was decreed to her, neither she nor they have a homestead in the premises as against the mortgagee.

3. And where the wife and children on the granting of the divorce moved from the premises and were absent two years, it was held to be an abandonment of the homestead.

EJECTMENT to recover the seisin and possession of a farm of land in Berlin. Heard on an agreed statement, March Term, 1887, VEAZEY, J., presiding.

Judgment *pro forma* and without hearing for the plaintiff for the seisin and possession of the farm in question except the two pieces set to Norman D. Sawyer in his distributive share in his father's estate ; and it was also *pro forma* adjudged that the defendant or her children have a homestead right in the excepted pieces to be set out, if this judgment is sustained. Both parties excepted. The facts appear in the opinion.

---

* Heard May Term, 1887,

Heaton *v.* Sawyer.

*T. J. Deavitt* and *Heath & Willard*, for the defendant.

The plaintiffs have no right or title to this homestead. A married man's sole deed does not convey any interest in the homestead. R. L. s. 1904; *Abell* v. *Lathrop*, 47 Vt. 375; *Day* v. *Adams*, 42 Vt. 516; *Canfield* v. *Hard*, 58 Vt. 217.

In *Abell* v. *Lathrop*, 47 Vt. 375, it is determined that under circumstances like those in this case the homestead right still continued and could be asserted after decree of foreclosure. "A divorce obtained by the wife will not deprive her of her homestead rights acquired during coverture in her husband's real estate, where she continues to reside with her children." *Blandy* v. *Asher*, 72 Mo. 27; *Van Zant* v. *Van Zant*, 23 Ill. 566; *Bonnell* v. *Smith*, 53 Ill. 575; Thomp. Home & Ex. ss. 1, 82.

The divorced wife being charged with the custody of the children, continued the head of the family and kept the homestead. *Sellon* v. *Reed*, 5 Biss, 125. She and the children never abandoned the homestead. *Larabee* v. *Wood*, 54 Vt. 452. Constant occupation is not required. *West River Bank* v. *Gale*, 42 Vt. 27. Even if the defendant has no right to a homestead, nevertheless the children have. *Blandy* v. *Asher*, 72 Mo. 27; *Callwalden* v. *Howell*, 18 N. J. L. 138; *Moore* v. *Dunning*, 29 Ill. 135; *White* v. *Clark*, 36 Ill. 285.

The case of *Bland* v. *Asher* was a similar one to the case at bar. The homestead exemption is humane in its character, and the statute should receive a liberal construction in view of the objects aimed at by it. *Jewett* v. *Guyer*, 38 Vt. 218; *True* v. *Morrill*, 28 Vt. 674; *McFlary* v. *Bixby*, 37 Vt. 254.

*J. H. Lucia*, for the plaintiffs.

The first part of the judgment was correct, so far as it went. R. L. s. 1250; *Chapin* v. *Scott*, 1 D. Chipman, 41; *Dodge* v. *Page*, 49 Vt. 137; *Canfield* v. *Hard*, 58 Vt. 217. The error consisted in limiting the recovery to a part instead of extending it to include the whole farm.

The second part of the judgment was erroneous because it is wrong on principle and contrary to authority.

The theory of the law is that the "widow or minor children," or "widow and minor children, if there are both," on the death of the "housekeeper or head of a family," take the homestead. But the divorced woman is not the wife and does not become the widow. Thomp. Home & Ex. s. 8; Bishop Mar. & Div. s. 705; *Whitsell* v. *Mills*, 6 Ind. 229; *Chenowith* v. *Chenowith*, 14 Ind. 2; *Dobson* v. *Butler*, 1 Mo. 8; *Moore* v. *Hegeman*, 27 Hun, 68; Matter of Ensign, 3 Hun, 152; Webster Dict. as to word "widow"; Worcester Dict.; Rapalje & L. Law Dict. The Heaton & Reed mortgage became operative and included the homestead as soon as the divorce was granted. *Whiteman* v. *Field*, 53 Vt. 55. Mrs. Sawyer had an incohate homestead right in the premises covered by the Heaton & Reed mortgages, now owned by the plaintiffs, as she did not join in the conveyance; but this right is absolutely cut off by the divorce.

"A divorce obtained by a wife bars her homestead right in her husband's property, unless such right is reserved by the decree of divorce." *Wiggin* v. *Buzzell*, 58 N. H. 329. The homestead law of New Hampshire is in effect similar to our own. G. S. Chap. 124.

In *Brandon* v. *Brandon*, 14 Kan. 324 the court say : " In granting a divorce whether on account of the fault of the wife or the husband, the court has power to award to her the possession of the homestead." *Wood* v. *Davis*, 34 Iowa, 264; 14 Ind. *supra;* 37 Hun, *supra.*

Mrs. Sawyer has acquired no homestead rights since the divorce. She took possession under foreclosure of her alimony mortgage; but since November, 1876, when the foreclosure of the plaintiffs' mortgages became absolute, her possession was that of a trespasser. *Calderwood* v. *Tevis*, 23 Cal. 335; 53 Iowa, 172; *Mann* v. *Rogers*, 35 Cal. 316; *McClurken* v. *McClurken*, 46 Ill. 327.

32

Heaton *v.* Sawyer.

The opinion of the court was delivered by

Ross, J. The controversy is whether the defendant has a homestead in the premises sued for. She was the wife of Norman D. Sawyer, and while such, had an incohate homestead right in the premises against all the claims now held by the plaintiffs except the Lydia Sawyer mortgage, which was given before she became the wife of Norman D. Sawyer. This mortgage did not cover the entire premises. While she was living with Norman D., as his wife, he executed three mortgages of the entire premises, which are held by the plaintiffs, and have been foreclosed. She did not join in the execution of either of these mortgages. After the giving of these mortgages, and after five children had been born to them, in 1873, the defendant procured a divorce from Norman D., and the custody of the five minor children. She received as alimony to herself $1,000, and to the children $1,000, and Charles H. Heath, Esq., was appointed trustee to hold and manage the children's $1,000, and both sums were secured by a mortgage from Norman D. on the premises. She then left the premises with the children and resided for two years in Montpelier. Norman D. failed to pay the alimony as ordered by the court and required by the mortgage, and the mortgage was foreclosed, and the decree became absolute in April, 1875. She was put in possession of the house and land on the westerly side of the road, not covered by the Lydia Sawyer mortgage, under a writ of possession issued to enforce the foreclosure of the mortgage securing the alimony to herself and children. She with the children have remained, and still are in possession of this portion of the premises, and claims a homestead right therein. She has also been in possession at times of the whole farm. In 1875 the plaintiffs procured a foreclosure of the three mortgages given them by Norman D. Sawyer, making Norman D., the defendant, and Charles H. Heath, trustee of the five minor children, and Lydia Sawyer, defendants. They prayed to be allowed to redeem the mortgage to Lydia Sawyer, and did redeem it. The defendants all appeared by

solicitor, and a guardian *ad litem* of the five minor children was also appointed and appeared. No mention was made in the bill that the defendant and the minor children claimed a homestead in the premises; and so far as appears the bill was allowed to be taken as confessed by all the defendants, and the decree became absolute. Norman D. lived in the house on the westerly side of the highway with the defendant and her children, as their tenant, until his death in 1885. These are the substantial ·facts agreed upon by the parties as determinative of their rights. On these facts the defendant claims that she has a homestead in the house and land on the westerly side of the highway which was not covered by the Lydia Sawyer mortgage; or, if she has not such a homestead, the children have, and she can defend the suit in ejectment against her claim in the right of the children; and it is agreed that the right of the children to a homestead therein shall be determined in this suit.

In examining these claims it will be helpful to keep in mind the statutory provisions in relation to the homestead right. It is a right wholly created and regulated, in regard to its conveyance and descent, by statute. By sec. 1894, R. L., it is given to a housekeeper or head of a family, and must be used or kept by such housekeeper or head of a family as a homestead. All who take an interest in the homestead, other than the housekeeper or head of a family, take through him, and because of their relations to him. The whole purpose and scope of the homestead exemption were and are to secure a home to a family. All the provisions are to that effect. If the housekeeper, or head of a family, is a married man, his conveyance of the homestead, except for certain purposes named, is inoperative so far as relates to the homestead provided for by statute, unless his wife joins in the conveyance. In *Whiteman* v. *Field*, 53 Vt. 554, it is held that its conveyance by the husband is only inoperative against the rights of the wife and minor children.

The object and purpose of the statute in creating the home-

stead have been fully accomplished so far as the wife and minor children are interested therein, when they legally cease forever thereafter to be a part of the family of the housekeeper or head of a family. This view is supported by sec. 1898, R. L., which provides that the homestead, on the death of the housekeeper or head of a family, shall descend to and vest in the *widow* and minor children, if he leaves any such. By this section the interest taken by the minor children terminates on attaining majority. By the decree of divorce procured by the defendant, with the custody of the minor children decreed to her, they thereafter ceased to be a part of the family of Norman D. Sawyer. She without remarriage could never become his widow. The minor children, without a change in the decree, could never become or constitute a part of his family, over whom he could exercise parental control, or to whom he owed the duty of personal care and support. By the decree she was given $1,000 in lieu of the rights already acquired in his estate, and the children the same amount for future support and education. They never thereafter were legally a part of the family of Norman D. Sawyer. While he lived with them on the premises, he was their tenant. He occupied a position in subordination to them. To them he was no longer the housekeeper or head of a family. Immediately upon procuring the divorce they withdrew from the premises, and were absent for two years. This was an abandonment of whatever rights they theretofore had in them as a homestead. The decree of divorce had separated them from Norman D. Sawyer, as their housekeeper or head of a family. They only returned on the foreclosure of the mortgage securing the payment of the sums decreed as alimony, and for the support and education of the minor children. They were then put in possession in the enforcement of the decree of foreclosure against Norman D. Sawyer, and not as a part of his family. The mortgage thus foreclosed and enforced, was subsequent to the mortgages held by the plaintiffs and which the plaintiffs have also foreclosed. The mortgage to the defendant and her minor children

derived all its force and vitality from the deed of Norman D. Sawyer. It could only convey such interest in the premises as he then had. So far as he was concerned, except the right to redeem, he had conveyed away all his rights therein by the three earlier mortgages foreclosed in favor of the plaintiffs. By the divorce the defendant lost the incohate right to a homestead in the premises that existed when the plaintiffs' mortgages were given; for she could not thereafter, without remarriage, become the *widow* of the mortgagor, which relation she must sustain, to have the homestead descend to, and become perfected in her, upon his decease. By the divorce the minor children were taken from the custody and control of the mortgagor, were assigned a portion of his estate for their support and education, and, while the decree remained unchanged, could not legally be members of his family, under his control and subjection. Under these circumstances he owed them no duty to provide them a home. Under the decree they were taken by the mother from his home. Such removal was an abandonment of the premises as their home. They never returned to it except in enforcement of the mortgage securing to them $1,000 for support and education. In that right they are now occupying a portion of the premises, and not in the right of a homestead derived from their father. During the last years he only occupied under the right which the widow and minor children acquired by the mortgage and as their tenant. The right of the widow and minor children under their mortgage from him was subordinate to the rights which the the plaintiffs acquired by his earlier mortgages. Hence, neither the defendant nor minor children have any right in or to any portion of the premises superior to the rights of the plaintiffs thereto.

The judgment of the County Court is reversed, and judgment rendered for the plaintiffs to recover the possession of the premises, and the cause is remanded for the assessment of the damages.